Wanamaker, J.
Plaintiff in error, James Welch, was found guilty and sentenced to the workhouse of Cleveland by the municipal court of Cleveland at its April term, 1916, under and by virtue of an ordinance of the city of Cleveland, passed June 21, 1915, the pertinent part of which reads as follows:
“Section 1. That any person found loitering about any bar room, gambling house, pool room, vessel, house of ill fame or gaming device, or about pools or baseball, prize fighting or horse racing; or found wandering about the streets, either by day or by night, without being able to give a reasonable and satisfactory account of himself, and any person with opium, opium pipe, cocaine or heroin in his possession; and any person upon whom shall *312 be found any device, instrument or thing used in the commission of burglary, larceny or other crime, or for picking locks or pockets, or any device, instrument or thing used in obtaining money under false pretenses; and any person who obtains his living by criminal means and practices or who is the companion and associate of criminals or other dissolute persons, and any person who deliberately and unnecessarily crowds or jostles passengers on street cars, railroads or in railroad stations for the purpose of committing theft or of aiding others to commit theft shall be deemed and held to be a suspicious person.”
Error was prosecuted to the court of appeals of Cuyahoga county, which affirmed the judgment below. Error is now prosecuted to this court to reverse the judgments of the courts below upon the grounds that the ordinance in question is in conflict, first, with Section 26, Article II of the Constitution of Ohio; second, with Section 3, Article XVIII of the Constitution of Ohio; and, third, with Section 3664 of the General Code.
We are not advised as to the particular part of this ordinance charged in the affidavit, and for the purposes of this case it is unnecessary to be so ad-r vised, since the attack is upon the ordinance as a whole. It is conceded that prior to the home-rule powers granted to cities in 1912 the limit of police power granted to municipalities in this behalf was conferred by Section 3664, General Code, which reads:
“To provide for the punishment of persons disturbing the good order and quiet of the corporation, *313 by clamor and noise in the night season, by intoxication, drunkenness, fighting, using obscene or profane language in the streets and other public places to the annoyance of the citizens, or otherwise violating the public peace by indecent and disorderly conduct, or by lewd or lascivious behavior. In like manner to provide for the. punishment of any vagrant, common street beggar, common prostitute, habitual disturber of the peace, known pickpocket, gambler, burglar, thief, watch-stuffer, ballgame player, a person who practices any trick, game or device with intent to swindle, a person who abuses his family, and any suspicious person who cannot give a reasonable account of himself
In 1912, Article XVIII, known as the home-rule amendment, was proposed by the Constitutional Convention, and overwhelmingly adopted by the people of Ohio as a part of their organic law. Section 3 of that amendment provides:
“Municipalities shall have authority to exercise all powers of local self-government,” etc.
If cities had the power, under said Section 3664, to declare against loafing and loitering “and any suspicious person who cannot give a reasonable account of himself,” as the statute evidently declares, surely that municipal power was not in any wise lessened by the grant in said Section 3. If a city has not such power it lacks the very first element for the preservation of public order, peace and government.
Government is instituted to protect the law-abiding against the law-violating. It is to protect the industrious, the thrifty, the honest members of *314 a community, against the idle, vicious and predatory. A government that fails so to do, or fails to have the power so to do, is unworthy of the name. The best antidote against crime and criminals is honest labor. Moses, the great lawgiver, recog-, nized the wisdom of this doctrine in the great commandment he wrote centuries ago, when he said:
“Six days shall thou labor and do all thy work.”
This policy is dictated and demanded for the prosperity of any community in time of peace. It is doubly imperative in time of war, and every man, woman and child under special patriotic obligations is bound to do not only his bit, but his best; and the police power of a community or commonwealth, and our countrjr at large, may profitably be invoked against the idler, the loafer, the slacker, rich or poor, high or low, in order to marshal our forces and resources, not only for a destructive warfare abroad, but for our constructive welfare at home.
The ordinance in question is neither in conflict with Section 3664, nor beyond the powers conferred by the home-rule amendment, Article XVIII of the Constitution of Ohio.
Section 26, Article II of the Constitution of Ohio, has no application to municipal ordinances. From their very language municipal ordinances are limited to the municipality, and those within its borders. The very purpose of the home-rule amendment, especially in chartered cities, was to give municipalities immunity from general laws. The objection that there is more than one subject covered by the ordinance, in violation of the statute governing the enactment of ordinances, must like *315 wise fail, for the manifest reason that said Section 1 is nothing more or less than a definition of a “suspicious person.” Therefore, the subject-matter of said Section 1 complained against is a “suspicious person,” and the particular classes enumerated may be fairly regarded as within that definition.
A case much in point is that of Morgan v. Nolte, 37 Ohio St., 23, decided in 1881. Nolte had been committed to the. workhouse of Cincinnati on a judgment of guilty, on the following affidavit:
“That one William Nolte, on the 21st day of December A. D., 1880, at the city and county aforesaid, being a known thief, was found in the city, contrary to the ordinance of said city.”
The ordinance under consideration in that case was enacted pursuant to Section 2108, Revised Statutes, a statute much similar to the one in this case. The question presented before the supreme court was chiefly whether or not Cincinnati had a right under this statute to pass such ordinance. Judge White, in his opinion, said:
“The only limitations to the creation of offenses by the legislative power, are the guaranties contained in the bill of rights, neither of which is infringed by the statute in question. It is a mistake to suppose that offenses must be confined to specific acts of commission or omission. A general course of conduct or mode of life which is prejudicial to the public welfare may likewise be prohibited and punished as an offense. Such is the character of the offense in question.”
A somewhat similar case arose later in the circuit court of Hamilton county, In re Opal Howard, *316 15 C. C., N. S., 171. In this case the court found:
“No power delegated to the city of Cincinnati to provide for the arrest and punishment of one 'unlawfully found loitering about and wandering about the streets of the city of Cincinnati in the day time and night time without any lawful means of support and without being able to give satisfactory account of himself.’ ”
No authority is cited in support of this dictum, nor is any reason given in the nature of public policy for the same. It is simply “thus saith the court.” This opinion is clearly contrary to the doctrine of the Nolte case, supra.
We regard that public policy most salutary and most humane which seeks to prevent crime from occurring rather than to punish it after it has occurred. This seems to be the fundamental purpose of the grant of power underlying the statute and the ordinance. We find no constitutional or statutory objection to the ordinance, and the same is therefore valid.

Judgment affirmed.

Nichols, C. J., Newman, Jones, Matthias, Johnson and Donahue, JJ., concur.